Filed 11/15/23  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID RICHARD GARCIA,<br><br>Defendant and Appellant. | C097915<br><br>(Super. Ct. No. 44791B) |

In 1990, defendant David Richard Garcia pled guilty to murder.  In 2022, he filed a petition for resentencing pursuant to Penal Code section 1172.6.[1]  The trial court denied his petition after an evidentiary hearing.  On appeal, defendant argues that the trial court erred in denying his petition because it could not properly consider he admitted to being the actual killer at his parole hearings, and without that evidence, there is no substantial evidence he committed felony murder.  He further argues the trial court could not properly rely on the factual basis contained in the record of conviction because the prosecution

---

[1] Undesignated statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  Defendant filed this petition under former section 1170.95, but we will cite to the current section 1172.6.

1

never moved to admit that as evidence. Finally, defendant argues the prosecution failed to introduce any evidence of the corpus delicti of the murder. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1990, a complaint charged defendant and two accomplices with murder. The complaint further alleged defendant and one codefendant also committed attempted murder, robbery, and rape. The complaint alleged enhancements defendant personally used a firearm and a deadly or dangerous weapon.

Two months later, defendant pled guilty to murder in exchange for dismissal of all other counts and enhancements.

Prior to taking the plea, the prosecutor recited the factual basis as: "On March 21, 19[90], in the County of Sutter, the defendant and two other individuals entered a residence at 1461 Gray Avenue, in Yuba City. [¶] At that time, they found the victim and a witness in the residence asleep. They confronted these people with guns. They tied them up, and then the defendant and the other two began a search of the house for various items of property. [¶] While there, by the use of force and/or fear, they were able to take the personal property of the victim, and during the commission of this robbery, one of the individuals took a baseball bat, beat the victim about the head and rendered him dead as a result of the beating. [¶] The death occurred in the course of this robbery, and that is the factual basis, your Honor." Defense counsel stipulated to that factual basis.

During the sentencing hearing, defense counsel asserted it was defendant's position "at the time that [he] entered the plea, that he did not, in fact, actually do [*sic*] the commission of the murder. He was an accessory to the felony charge, an accessory to the murder. [¶] And, the purpose of this entry of plea, I want to make sure that the Court and the record is clear, that his position is that he did not commit the murder." The prosecutor responded he was ready to stand by the factual basis previously recited and that defendant "was engaged in the commission of a robbery when the victim was killed."

The trial court sentenced defendant to 25 years to life.

In 2022, defendant filed a petition under section 1172.6 seeking resentencing. The trial court concluded defendant had made a prima facie case and issued an order to show cause setting the matter for an evidentiary hearing.

At the outset of that hearing, and without objection from either party, the trial court noted it had reviewed the record of conviction that included the factual basis and defense counsel's later claim defendant did not admit to being the actual killer in that factual basis. The trial court also noted it could consider "[t]he plea . . . and factual basis for the plea" in making its decision. At the start of the prosecution's presentation, and without objection, the prosecutor asked the court to consider that factual basis in ruling on the petition. After, the court read the factual basis into the record and asked if either party wished to be heard. The prosecutor stated, "[t]hose are pretty much the pertinent facts that I was asking the [c]ourt to keep in consideration." Defense counsel said he had no comments.

Due to foundational issues with the transcript of the parole proceedings, the prosecution offered the testimony of the victim's son who had attended defendant's parole hearing in 2019. The son testified he had carefully examined the 125-page transcript of the parole hearing and believed it was a true and accurate record of what was said at that hearing. Without objection, the prosecutor read the witness statements from the transcript and asked if the son heard that testimony. The son confirmed the defendant's testimony in this manner. The substance of the son's testimony follows.

The defendant swore to tell the truth at the hearing. Defendant told the parole board there was an opportunity to commit a murder to facilitate moving up in the gang and a lot of people wanted to do it, but defendant wanted to do it first. Defendant said, "I planned it. I got everybody together, got a motel. I had all the guns. They were all mine. Everything was mine, the drugs, the guns, and I ran the orders." Next, defendant said, "So it was me. So we went in there. I went directly to [the victim] and I told him what I was here for and, uh, I'm not leaving until I get it, and he laughed at me and, uh, he spit on my face." Defendant then said, "My anger took over. I didn't know how to respond to that except by

3

violence. So I picked up something that was next to me, and I hit him, and I kept hitting him. Before I knew it, he was -- it was over, and I had realized what I'd done."

The prosecution offered several adoptive admissions by defendant. Generally, defendant did not deny he was determined to kill the victim, that he murdered, beat, or killed him. Defendant did not deny giving orders during the killing. When a parole commissioner asked defendant, "[i]t wasn't . . . I started hitting him and lo and behold he was dead," defendant responded, "That was -- no, that was -- that was just anger. That was because he spit in my face. It was -- and plans don't ever go like they're supposed to be. They never does. You know, I actually planned some contingency plans and -- like a dumb-ass. I -- I thought that I knew what I was doing. I knew what I was doing." Further, in response to a question that had as its premise defendant was beating the victim, defendant replied he was sorry for what happened to the woman raped during the beating but did not deny beating the victim. Defendant responded "five," to the question, "You're determined to kill him. You want to get some money. You're yanking, what was it, four people along with you?" In response to the question, "So you -- you kill [the victim]. You're going through the house looking for your money, drugs, whatever it is you're looking for and, uh, then what did you do?" defendant said, "There's nothing there. I mean, I started yelling at Raul. You know, 'You lied. This -- guy ain't got nothing. Uh, what's going on.' "

When the parole commissioner asked defendant why he did it, defendant responded, "what I figured out is that I knew that one day I would end up killing somebody. It didn't -- it didn't matter who. It just -- I knew I -- I would. I carried a gun every day."

When asked how he had impacted the victim, defendant said, "I took his life. I, uh, I gave no consideration to the fact that he was a human being. Yeah, the things you do when you're a kid, you don't think -- I didn't look at -- at him or -- or -- or -- or anybody else with any substance like they were belonging. It was just me, me, me, me, and I took

4

his life for something stupid.  Idiotic, to be truthful." He also said the victim's wife was "traumatized by what I did to her man."

The trial court refused to admit the transcript provided by the prosecution because the prosecution could not lay an adequate foundation.  However, the trial court accepted the answers as presented by the witness.

At the conclusion of the hearing, the trial court found the prosecution proved beyond a reasonable doubt defendant was either the actual killer in this felony murder, or at the very least, defendant was a substantial participant in the crime who acted with reckless disregard for human life.  As part of that analysis, the court repeated it was able to consider the factual basis without objection from defendant.  Thus, the court found defendant was ineligible for resentencing and denied the petition.

Defendant filed a timely notice of appeal.

## II.  DISCUSSION

Defendant argues the trial court could not properly consider his admissions at his parole hearing.  He further argues the trial court could not consider the factual basis contained in the record of conviction because the prosecution never moved to admit that as evidence.  Finally, defendant argues the prosecution failed to introduce any evidence establishing the corpus delicti of the murder.  We disagree.

*A.        Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

As relevant here, the bill amended section 189, subdivision (e), which now provides:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is

5

proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." Robbery is included in the listed felonies.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) also added section 1172.6, which provides the procedure by which those convicted of murder premised on either a felony murder or natural and probable consequences theory can petition for resentencing if they could not now be convicted of first or second degree murder because of changes made by the bill to sections 188 or 189. (Stats. 2018, ch. 1015, § 4; former § 1170.95, subd. (a).)

Upon the issuance of an order to show cause, the prosecution has the burden to "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Section 1172.6 sets forth the procedural requirements for that evidentiary hearing. Admission of evidence is governed by the Evidence Code, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

*B.      Substantial Evidence Standard of Review*

In reviewing a trial court's finding that the prosecution has proven defendant is guilty of murder under current law, "[w]e review the trial judge's factfinding for substantial evidence." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "We ' "examine the entire record in the light most favorable to the judgment to determine

6

whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate, and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's finding beyond a reasonable doubt." (*Ibid*.)

      C.    *Defendant's Parole Hearing Testimony*

Defendant argues on the strength of the dissent of *People v. Mitchell* (2022) 81 Cal.App.5th 575, 602-605 (dis. opn. of Stratton, P. J.), that the trial court should not have considered any statements defendant made at his parole hearing. He asserts the use of this evidence violated his privilege against self-incrimination, his right to equal protection, his right to due process, and his judicially created rights under *People v. Coleman* (1975) 13 Cal.3d 867, 892 (*Coleman*). We disagree.

Rather, we agree with the unbroken line of cases defendant concedes is the "bulk of authority to date" that allows for admission of this evidence. (*People v. Mitchell*, *supra*, 81 Cal.App.5th at p. 586 (maj. opn.); *People v. Duran* (2022) 84 Cal.App.5th 920; *People v. Anderson* (2022) 78 Cal.App.5th 81; *People v. Myles* (2021) 69 Cal.App.5th 688 (*Myles*).)

In *Mitchell*, the majority rejected defendant's argument the trial court could not consider evidence from his parole hearing, concluding there was no categorical exclusion of defendant's sworn parole hearing testimony at the evidentiary hearing, and further that section 1172.6 explicitly allowed the trial court to consider new evidence. (*People v. Mitchell*, *supra*, 81 Cal.App.5th at p. 586.) The appellate court came to that same conclusion examining the purpose of the statute which is "to ensure murder culpability is commensurate with a person's individual actions." (*Id.* at p. 587.) To ascertain whether a

particular defendant should be resentenced, "the focus is on examining the truth of what happened to evaluate whether to reduce an individual's sentence so the punishment fits the crime." (*Ibid.*) "It would contravene this goal of individualizing punishment for courts to blind themselves to the individualized facts of the case. . . . [A] parole transcript can be a valuable source of information about a particular defendant's actions, and thus potentially important in the work of aligning individual punishment with individual culpability." (*Id.* at pp. 587-588.) The court concluded, it is both fair and sensible to say a convicted person's own words are pertinent when that person petitions for the benefit of resentencing. (*Id.* at p. 590.)

As noted by the *Myles* court, our California Supreme Court in *Coleman*, *supra*, 13 Cal.3d at page 892, crafted a judicial rule that the "probation revocation proceeding could not be used against [defendants] by the prosecution to lighten its burden of proof at trial." (*Myles*, *supra*, 69 Cal.App.5th at p. 705.) The Supreme Court based its decision on the concept that the defendant should not be forced to choose between "the privilege against self-incrimination at trial and the exercise of the right to be heard at a probation revocation hearing." (*Ibid.*) The *Myles* court concluded the *Coleman* rule did not apply to parole hearing testimony in section 1172.6 proceedings because defendants do not have the right against self-incrimination in section 1172.6 proceedings, nor did the government coerce the defendant's statements at the parole hearing. (*Myles*, at pp. 705-706.)

Section 1172.6, subdivision (d) allows the parties to rely on new or additional evidence in the evidentiary hearing, subject to the rules of evidence. Defendant's statements are party admissions that were admissible new evidence and were properly considered by the trial court. (See Evid. Code, § 1220 [hearsay exception for party admissions].) We agree there is no viable judicial restriction on the use of this evidence.

For the first time on appeal, defendant contends allowing this evidence violates his equal protection right because persons accused of murder who have not voluntarily and knowingly waived their privilege against incrimination are similarly situated to convicted

8

murderers who have testified on their own behalf at a parole hearing and incriminated themselves. Defendant argues the former may have their statements excluded while the latter may not. Defendant failed to raise this argument to the admissibility of this evidence in the trial court and has forfeited it now. (*People v. Anderson* (2001) 25 Cal.4th 543, 586.)

### D.    Factual Basis

Defendant argues "the prosecutor's statements at the 1990 change of plea hearing, which the trial court *sua sponte* read into the record in 2022, must be excluded" because the prosecutor never moved to admit that into evidence. We disagree.

Section 1172.6, subdivision (d) provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

The parties stipulated to the factual basis in the prior proceedings as the basis for defendant's plea. The trial court told the parties it would be considering this stipulation in making its decision. And the prosecutor asked the trial court to do so as well. Defendant offered no objection to the trial court's consideration of this at the hearing, presumably because the statute explicitly allows for the use of this stipulated evidence. Defendant forfeited any argument that the trial court could not properly consider this evidentiary stipulation. (*Myles*, *supra*, 69 Cal.App.5th at p. 696.) To the extent defendant argues he was not required to object because the factual basis was not admitted as evidence, the trial

9

court's statements that it read and considered this and its request for input from the parties disclosed the trial court intended to use this evidence in its analysis. It was at that point defendant could have objected. But defendant did not.

### E.     Substantial Evidence

Framed as a due process challenge, defendant argues the prosecutor failed to meet his burden at the evidentiary hearing of demonstrating defendant was guilty of murder. Substantial evidence supported the trial court's ruling.

The factual basis for defendant's plea demonstrated defendant and two others entered the victim's residence, found the victim and a witness asleep, confronted the people with guns and tied them up. It further demonstrated defendant and the accomplice took personal property from the victim by force and/or fear. Finally, the factual basis demonstrated one of the three took a baseball bat, beat the victim about the head and rendered him dead because of the beating. Thus, the factual basis established defendant committed a robbery, and a murder occurred during that robbery. (§§ 189, 211.) On its own, this factual basis did not identify the murderer.

Defendant's admissions at the parole hearing, however, supplied the missing link. His parole hearing testimony added that to advance in his gang, defendant planned a drug robbery, organized the people to commit the robbery, arranged for a motel the night before, brought the weapons, called all the shots and ultimately, took a baseball bat and beat the victim to death. His adoptive admissions were consistent with this testimony.

The trial court properly found the prosecution established beyond a reasonable doubt defendant was the actual killer. (§ 189, subd. (e) ["A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer"].) The factual basis for the plea, defendant's stipulation to it, and his parole admissions collectively constitute substantial evidence that supports the trial court's

10

finding the prosecution proved defendant remains guilty of murder as the actual killer during a robbery under current law.

F. *Corpus Delicti*

Finally, defendant argues the record lacks evidence establishing the corpus delicti. We disagree.

"The corpus delicti rule requires some evidence that a crime occurred, independent of the defendant's own statements." (*People v. Ledesma* (2006) 39 Cal.4th 641, 721.) " '[T]he modicum of necessary independent evidence of the corpus delicti, and thus the jury's duty to find such independent proof, is not great. The independent evidence may be circumstantial, and need only be a "a slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency, after which the defendant's statements may be considered to strengthen the case on all issues.' " (*Ibid.*) Assuming without deciding that the corpus delicti rule applies here, the record of the conviction's factual basis for the crime established the victim was killed and established the criminal agency (i.e., one of the robbers "took a baseball bat, beat the victim about the head and rendered him dead as a result of the beating"). The corpus delicti was thus established.

## III. DISPOSITION

The judgment is affirmed.

/s/
Mesiwala, J.

We concur:


/s/
Earl, P. J.


/s/
Renner, J.